

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

August 31, 1964

Honorable Jerry Sadler
Commissioner
General Land Office
Austin, Texas

Dear Mr. Sadler:

Opinion No. C-304

Re: Authority of the School
Land Board to reduce the
gas royalty of a river
bed tract.

You have requested an opinion of this office to determine whether the School Land Board has the authority to reduce the amount of gas royalty to be paid under the terms of an oil and gas lease executed in 1934 by the Board for Mineral Development, predecessor of the present School Land Board.

The terms of the lease provided for a sliding royalty scale on oil of not less that 25-1/2% up to 66-2/3% and a straight 50% royalty on gas that was produced and saved. The lease has been held by production throughout the years by oil production.

However, in 1960 the Cayuga (Trinity) Gas Field was discovered and there were three offset wells drilled to the 120 acre State River Bed Tract. Because of the high royalty provisions for gas, it has been impracticable for an operator to either drill this tract or to pool it with adjoining tracts to form a gas unit. The State tract therefore has been drained for the past several years by these offset wells. The only way the tract can be protected from this drainage is to have the 50% gas royalty reduced so that the lessee can either drill this tract or pool it with adjoining acreages to form a gas unit.

Article 5421c, Subsection 6b, Vernon's Civil Statutes, which was passed in 1933 by the 43rd Legislature, provides in part as follows:

". . . provided, further that said Board
may modify said contract as aforesaid by
adjusting up or down from time to time the
State's portion of said oil and/or money
payment as the conditions hereinbefore set
forth may justify and which may be equitable

-1454-

> to the State and to said contractors or
> their assigns, but in no event shall the
> State's portion be less than one-fourth
> nor more than now provided in said con-
> tracts, and in no event shall the Board
> of Mineral Development have any authority
> to modify or change said original leases
> as to gas. . . ." (Emphasis added.)

Certainly this article, if still controlling, would prohibit the School Land Board from reducing the gas royalty to a lower percentage than that provided in the original lease.

However, in 1951 the 53rd Legislature enacted Senate Bill 307, codified as Article 5382c, Vernon's Civil Statutes, which authorized the Commissioner of the General Land Office after the approval of the School Land Board to enter into unitization and pooling agreements wherein the School lands and State lands can be placed into oil or gas units.

Section 2 of that statute provided that:

> "Any agreement authorized to be executed
> under the provisions of this Act may pro-
> vide: . . . (5) such other things as the
> board, official, agent, agency or authority
> of the State vested with authority to lease
> or approve the leasing of said lands may
> deem necessary for the protection of the
> interests of the State." (Emphasis added.)

Section 5 of that statute stated very clearly the reasons that the Act was passed. It reads in part as follows:

> "The fact that the value of many state-
> owned tracts is being diminished and there
> is doubt as to the extent of the power of
> the Commissioner of the General Land Office
> to enter into agreements of the kind de-
> scribed herein, create an emergency. . . ."

Section 3 of the Act provided that all prior laws in conflict therewith were repealed.

The Legislature in enacting Senate Bill 307 certainly gave the School Land Board the authority to enter into pooling and unitization agreements when it would be for the best interest of the State to do so. The Board further has the

authority to approve agreements with certain provisions they deem necessary for the protection of the interests of the State.

The Legislature in enacting the present Article 5382c has repealed that portion of Article 5421c, Section 8, Subsection 6b, which prohibited the Board for Mineral Development from changing or modifying the terms of an original oil and gas lease as to gas. In passing Article 5382c, the Legislature gave the School Land Board the authority to enter into unitization and pooling agreements affecting State lands. It is an elementary principle of oil and gas law that the execution of a gas unitization agreement changes the terms of the original lease. Veal v. Thomanson, 138 Tex. 341, 159 S.W.2d 472 (1942).

Therefore, it is the opinion of this office that the School Land Board does have authority by virtue of the provisions of Article 5382c to reduce the gas royalty from that provided in the original lease by entering into a unitization or pooling agreement which provides for a lesser royalty, provided however, that the Board deems such provisions necessary to protect the interests of the State.

## S U M M A R Y

The School Land Board has authority under Article 5382c, V.C.S., to modify the terms of an oil and gas lease as to gas if they deem such changes as for the best interest of the State.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By Linward Shivers

Linward Shivers
Assistant Attorney General

LS:afg

APPROVED:

Opinion Committee
W. V. Geppert, Chairman

Ben Harrison
Larry Merriman
Grady Chandler
Larry Craddock

APPROVED FOR THE ATTORNEY GENERAL
By:  Stanton Stone